LUELLA BILLINGS, Appellant, v. NORTH KANSAS CITY BRIDGE & RAILROAD COMPANY.—93 S. W. (2d) 944.

Division One, April 23, 1936.

*Henry L. Warren* and *Shultz & Owen* for appellant.

*James S. Simrall* and *Henry L. Jost* for North Kansas City Bridge & Railroad Company.

1124

COLLET, J.—By this action plaintiff seeks to recover damages in the sum of $25,000 from the Kansas City Bridge & Railroad Company for personal injuries received when the truck in which she was riding, and which was driven by her son, collided with a girder on the south end of a bridge over the Missouri River between Kansas City and Clay County, Missouri. The accident occurred between eight-thirty and nine o'clock on the evening of July 7, 1929. The action was originally brought against the city of Kansas City and the defendant North Kansas City Bridge & Railroad Company. A settlement with the city resulted in the dismissal of the action as to that defendant. The cause was tried in the Circuit Court of Jackson County where a jury returned a verdict for the defendant bridge company. From the judgment entered in accordance with that verdict, plaintiff appeals.

The petition alleges that plaintiff was injured "by reason of a defect and obstruction, consisting of an iron girder, situate in a

public thoroughfare, which defect. and obstruction was negligently constructed and maintained by defendants in said highway, . . . that the ends of said girders . . . so exposed in said highway . . . rendered said . highway not . reasonably safe for travel thereon and constituted a nuisance; that defendants negligently failed to mark, by any barrier, light or danger signal, said defective condition; that at said time and place, while riding in an automobile truck over said highway, said automobile truck—by reason of said defective and dangerous condition and nuisance—collided with the south end of one of said girders . . ·. .thereby causing her· to receive the following injuries. . . ." The answer specifically. denied that defendant bridge company owned or maintained the bridge on July 7, 1929, and alleged that ever since July —, 1927, the ·State of Missouri by and through the State Highway Department had been the owner of the bridge and had since that date maintained the upper deck and surface thereof as a part of its highway system; that the city of Kansas City had by contract with the State agreed and undertaken to adequately light the bridge; and that whatever, if any, cause of action plaintiff has was against the city of Kansas City alone.

The proof shows that. the bridge was constructed about 1911 or 1912 by the defendant bridge company under another · corporate name and was thereafter operated and maintained by defendant as a privately owned toll bridge until July 14, 1927. On ·that date a contract was entered into between the city · of Kansas ·City, Clay County, the State Highway Commission and the defendant, North Kansas City Bridge & Railroad Company by the· express terms of which the city of Kansas City and Clay County purchased the bridge for the sum of $1,500,000 in order that the upper deck thereof should constitute and be maintained and operated as a free public highway. In consideration of the payment of the $1,500,000 and certain agreements and undertakings on the part of the city, county and State including the assumption by the State Highway Commission of the obligation to maintain .the bridge, the bridge company conveyed. the title to the bridge to the .city and county, reserving, however, certain rights including the right to use the lower deck for railroad purposes and the ·right to use. and maintain its street car track on the upper deck. By the same agreement .the city and county in consideration of the bridge and approaches becoming and constituting part of the state highway system to be maintained by the State Highway Commission tendered the title .to the bridge and approaches to the State with the stipulation that the city would furnish all necessary and proper lighting. By its execution of the agreement the State Highway Commission accepted the tender on behalf of the State and expressly agreed, with certain exceptions not

material here, to perpetually maintain the bridge and approaches and make all necessary alterations.

Prior to the sale of the bridge, and while it was being operated as a toll bridge, toll collectors were stationed at each end where travelers were compelled to stop and pay toll or surrender a receipt showing that toll had been paid at the other end. The girders in question were located between the toll collecting places. One of plaintiff's witnesses testified that during that period a curbing six or eight inches in height was maintained around the girders "making it impossible for a wheel or even half a wheel to hit a girder unless it mounted the curbing." After the sale of the bridge traffic moved over the bridge "with the same freedom of movement as on any other public highway." In 1928 the State Highway Commission refloored the upper deck with concrete, removed a part of the curbing around the girders and painted the girders in black and white stripes. The amount of traffic over the bridge greatly increased after the tolls were eliminated. As stated above, the accident occurred July 7, 1929. The contract above referred to provided that proposed alterations to the bridge should be submitted by the highway commission to the defendant bridge company and approved by the bridge company before the alterations were made. An engineer employed by defendant, testifying for plaintiff, stated that the plans for the reconditioning work done by the highway commission in 1928 were approved by defendant in so far as it affected the railroad deck and the street car line on the upper deck but that the bridge company was not interested in the alterations except to the extent that the street car line might be affected. The same witness testified he had been employed by defendant for twenty-four years and had never heard of a vehicle striking the girders during the time the bridge was operated by defendant as a toll bridge. In 1932, about a month before the trial of this case, the girders were entirely removed by the highway commission.

At the close of plaintiff's evidence defendant offered an instruction in the nature of a demurrer which was overruled. The only evidence offered by defendant was the testimony of a physician relating to plaintiff's physical condition. At the close of all the evidence the request for a directed verdict was renewed and again refused. By an instruction designated as plaintiff's Instruction 1, given on the court's own motion, the jury was instructed that plaintiff should recover if it found there was a girder (describing it) located in the traveled portion of the south approach to the bridge which projected above the surface "of said highway" and which was constructed by defendant in such a manner that the highway was rendered "not reasonably safe for travel thereon by automobile from the time of its construction by defendant and up to and including July 7, 1929

for the purposes for which the upper surface of said bridge was built and used during said period by automobile traffic'' and further that defendant caused and required the girder to be maintained *as constructed* up to the time of plaintiff's injury. The court withdrew from the jury the assignment of negligence relating to the defendant's failure to properly light the bridge. ▉ The verdict was for the defendant. Plaintiff does not now complain of the action of the court in giving the instructions above referred to but confines her assignments of error to the giving of certain other instructions on behalf of defendant. Defendant contends that its demurrer to the evidence should have been sustained. If that be correct, errors in the giving of defendant's instructions become immaterial. [Bello v. Stuever (Mo.), 44 S. W. (2d) 619.]

Reference to Instruction 1 discloses that the trial court submitted the case to the jury upon the theory that there was evidence to support a finding that defendant constructed the bridge and girder in such a manner that the girder constituted a nuisance under the conditions existing at the time of its construction and that defendant caused and required it to be maintained in the same condition as constructed up to and including the date of plaintiff's injury.

▉ The instruction was correct in requiring the jury to find in effect that the girder constituted a nuisance during the time when it was under the control of defendant, because if it was not a nuisance at the time defendant parted with control over it then it could not thereafter become a nuisance *for which defendant would be liable*. This is because defendant cannot be held liable for the existence of the girder as a nuisance if the nuisance was created by a new and different use to which the girder was put after defendant's control over it had ceased. But, although it was admitted that defendant constructed the girder and was responsible for its condition and location prior to the date of the sale of the bridge, there is no evidence to support a conclusion that the existence of the girder in the toll bridge constituted a nuisance under the conditions which existed before the sale and while the bridge was being used as a toll bridge. The evidence is uncontradicted that the bridge was constructed according to plans approved by the War Department and the city of Kansas City. The character of its structural design was in general approved use at the time. Certainly the girder did not constitute a nuisance *per se*. Its characteristic, as a nuisance or otherwise, must therefore be determined by the manner of its use under the conditions existing at the time its status is to be determined. [Givens v. Van Studdiford, 86 Mo. 1. c. 156.] There is no support in this record for a finding that the manner of the use of the bridge during the period when it was owned and operated by defendant as a toll bridge was such that the existence

of the girder constituted a dangerous obstruction or a nuisance. Upon the sale of the bridge and its acceptance by the State Highway Commission its characteristic changed from that of a toll bridge to a part of the state highway system. [Lowery v. Kansas City, 337 Mo. 47, 85 S. W. (2d) 104.] From and after that date, both by the terms of the contract and the statute (Secs. 8139, 8104, 8107 and 8115, R. S. 1929) all control over the manner of the use of that part of the bridge under consideration was transferred to the State Highway Commission. Thereafter the State Highway Commission was charged by law with the duty and responsibility of maintaining it in a proper manner for use as a part of a state highway. If the girder became a nuisance after the sale of the bridge it was because of the manner in which the bridge was used or the girder maintained, neither of which the defendant had any control over or responsibility for. ■ Plaintiff contends that the provision of the contract of sale requiring that plans for alterations be first submitted to and approved by defendant constitutes evidence of control by defendant over the purpose and manner of use of the bridge after its sale. Read in the light of the other provisions of the contract this provision amounted to nothing more than a veto power on the part of the bridge company to prevent the making of any alterations which might interfere with the exercise of the rights reserved by defendant.

■ The contention that plaintiff makes in her reply brief that "defendant is appropriating to its own use a portion of a public highway and in so doing becomes liable if that use of the highway is inconsistent with its use by the public" is not sound for two reasons: First, it presupposes the ownership and use of the girder by defendant on July 7, 1929, neither of which assumptions are correct. Second, it assumes that defendant either constructed the girder in the public highway or is maintaining it there. That the girder could not have been constructed in the public highway is obvious from the fact that the bridge did not become a part of a public highway until July 14, 1927, many years after the construction of the girder. [Lowery v. Kansas City, supra.] It has heretofore been demonstrated that defendant was not maintaining the girder after July 14, 1927.

The fact that defendant did not own the bridge after its upper deck became a part of a public highway and did not thereafter maintain the girder should dispose of plaintiff's argument that this case is analogous to a case where a property owner maintains a coal hole or cellar door in a sidewalk after the sidewalk and adjacent area has been dedicated for highway purposes. It could not be seriously argued that such a case was similar to one where the property owner transferred the complete ownership and control of the adjacent prop-

erty, including the coal hole and cellar door, to the State at the time of the dedication of the sidewalk for highway purposes. A situation similar to the latter existed in the present case.

The defendant's demurrer should have been sustained. The judgment is therefore affirmed. All concur.